Filed 5/3/17

**CERTIFIED FOR PUBLICIATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| LESLIE WITHERSPOON HINRICHS, | 2d Civil No.B267505 (Super. Ct. No. 56-2011-00395805) |
| Plaintiff, Cross-defendant and Appellant, | (Ventura County) |
| v. | |
| GEORGE R. MELTON, as Trustee, etc., et al., | |
| Defendants, Cross-complainants and Appellants; | |

How does a landowner whose parcel is landlocked gain access to the property? In *Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259 (*Linthicum*), we held that the trial court may grant the landowner an equitable easement over a neighboring property. In *Linthicum*, the party to whom an equitable easement was granted had been using a road on neighboring property for several decades. Here we hold, among other things, the court may grant an equitable easement without

1

there being a preexisting use by the landowner seeking the easement.

Plaintiff, the owner of a landlocked parcel of land, brought an action against the owners of three neighboring parcels seeking to establish easements for access to his parcel. The trial court established access by finding an easement by necessity over one parcel and a connecting equitable easement over another parcel. The court found no easement over the third parcel. The owners of the parcels over which the court found easements appeal. Plaintiff, dissatisfied with the route chosen by the court, also appeals. We affirm.

FACTS[1]

In 1993, Leslie Hinrichs inherited two contiguous parcels of real property from his mother. The southern parcel is improved with a residence. The northern parcel is unimproved. It contains a rocky ridge running east and west along most of the parcel. In determining an access route to this parcel, one must consider the difficulties imposed by the ridge. When he was growing up, Hinrichs lived in the residence on the southern parcel, but has lived in Alaska since the 1980's. In 1999, Hinrichs sold the southern parcel to the Asquith Family Limited Partnership (Asquith). The conveyance left the northern parcel landlocked.

---

[1] Describing the topography of the parcels and their relationship to one another is a challenge to both writer and reader. To aid the reader we take a cue in only one respect from written instructions to assemble products. We attach as appendix A to our opinion a map depicting the parcels and the respective roads on those parcels. Luckily the reader only has to comprehend, not assemble anything.

A parcel owned by George and Margaret Melton lies to the north and east of the northeast corner of the Hinrichs parcel.

Eugenijus Valiulis is a trustee of a living trust that owns a parcel to the east of the other three parcels. The Valiulis parcel is contiguous with the eastern boundaries of the Asquith and Melton parcels, but is separated from the Hinrichs parcel by the eastern portion of the Melton parcel.

All of the parcels are approximately 20 to 30 acres and are in a rural setting. No parcel has direct access to a public road. The closest public road is Thacher Road, lying to the south of the parcels and separated from the parcels by private property. Thacher Road runs east and west.

The parties gain access to their parcels from Thacher Road through Ladera Road, a private road running northerly from Thacher Road. Ladera Road runs northerly into the Valiulis parcel where it divides. Ladera Ridge Road runs easterly from Ladera Road through the southern portion of the Asquith parcel. Hermitage Road runs northerly from Ladera Road through a portion of the Valiulis parcel, then bends northwesterly running through the Melton parcel and intercepting the northeast tip of the Hinrichs parcel.

Asquith, the Meltons and Valiulis do not contest Hinrichs's right to use Ladera and Ladera Ridge Roads. But the Meltons and Valiulis denied Hinrichs right of access over any other portion of their parcels.

### The Trail

Hinrichs's complaint sought an easement over what he characterizes as the "historic trail." He claims the trail was documented in a federal survey map as far back as 1868.

3

The trail runs from the eastern edge of Hinrichs's parcel through the southwest corner of the Melton parcel, across the northeast portion of the Asquith parcel and into the eastern portion of the Valiulis parcel where it connects with Ladera Ridge Road. Hinrichs reserved an easement over the Asquith parcel in the 1999 deed. The easement was intended to connect with the trail as it passed over the Melton and Valiulis parcels, but Hinrichs had no easement over those parcels.

The trail is an unpaved path. The last time Hinrichs drove the trail in a motor vehicle all the way to his property was in 1994. Prior to that, he drove the trail in 1993. The last time he attempted to drive the trail in a motor vehicle was in 2002. He stopped after only 50 feet because the trail was so overgrown he did not want the vegetation to scratch his car.

At the time Valiulis purchased his parcel in 2003, there were boulders blocking the trail as it entered his property from Ladera Ridge Road. In 2004 or 2005, Valiulis added more boulders to block the entrance to the trail. He used heavy equipment to place the boulders and added a barbed wire fence at the entrance to the trail. Valiulis testified he intended to prevent everyone from using the trail.

In 2006, Hinrichs sued Valiulis for access over a portion of the trail on Valiulis's parcel. Hinrichs dismissed the action after the trial court denied his request for a preliminary injunction.

*Hermitage Road*

Hinrichs's original complaint sought an easement over the trail. During discovery, however, Hinrichs learned that Hermitage Road intersects with the northeast corner of his parcel. He amended his complaint to allege Hermitage Road as a

4

possible easement. Hermitage Road is a private improved road that runs through the Valiulis parcel, then the Melton parcel north of the trail, before it intersects with the northeast corner of Hinrichs's parcel. Hinrichs's complaint describes the Hermitage Road as the "best access route."

*Statement of Decision*

The trial court rejected Hinrichs's claim of an easement by prescription or as appurtenant to a federal patent over the historic trail. The court found that if Hinrichs ever had an easement over the trail as it crosses the Valiulis parcel, it has been extinguished by adverse possession.

The trial court granted Hinrichs an easement by necessity over the Asquith parcel. Most of the easement is over an existing driveway that runs northerly from Ladera Ridge Road. A roadway over a relatively short area north of a parking lot on the Asquith parcel has to be constructed. The easement over the Asquith parcel would end at the Melton parcel.

The trial court also granted an equitable easement over a small portion of the Melton parcel under the doctrine of balancing of the hardships. The trial court found:

"[T]he MELTON'S would suffer little to no harm from the use of the section of their property at issue in this case. The evidence established that it is at the very back of their property and separated from the rest of their property by a creek bed. It established that they did not use the property for any purpose and had visited it rarely if at all. There did not appear to be even a potential use to them for the piece of property.

"On the other hand, that section of the MELTON property would allow the owners of the HINRICHS parcel to access the ASQUITH property previously owned by them over

5

which the Court has determined HINRICHS would have an easement by necessity.  As the HINRICHS property would otherwise be landlocked and therefore virtually useless, the 'relative hardship' test clearly favors the Plaintiff HINRICHS."

DISCUSSION

I

*The Meltons' Appeal*

The Meltons contend the trial court abused its discretion by even considering the granting of an equitable easement over their parcel.

The trial court may grant an equitable easement where the hardship to the party seeking the easement is greatly disproportionate to the hardship caused to the servient owner over whose property the easement is granted.  (*Linthicum, supra*, 175 Cal.App.4th at p. 265.)  The court should consider whether the need for the easement is the result of the willful act of the party seeking the easement.  (*Ibid*.)  The court should also consider whether the servient property owner will suffer irreparable injury by the easement.  (*Ibid*.)

The Meltons argue there is no evidence of a current use of the Meltons' property by Hinrichs or anyone else.  It may be true that an equitable easement often involves a preexisting use of the servient owner's property.  But a preexisting use is not an element of an equitable easement.  (See *Linthicum, supra*, 175 Cal.App.4th at p. 265.)  The argument that only a long-standing encroachment would justify the creation of an equitable easement has been rejected.  (*Tashakori v. Lakis* (2011) 196 Cal.App.4th 1003, 1013.)  The Meltons cite no authority that requires a prior use as an element of an equitable easement.

6

The Meltons argue Hinrichs was not innocent or non-negligent. In *Linthicum*, we stated: "The question whether the defendant's conduct is so egregious as to be willful or whether the quantum of the defendant's negligence is so great as to justify an injunction is a matter best left to the sound discretion of the trial court." (*Linthicum*, *supra*, 175 Cal.App.4th at p. 267.)

Here the trial court found that Hinrichs is innocent because he believed long after the Asquith parcel was sold that he had a right of way over the trail. The court did not abuse its discretion in determining Hinrichs's actions do not bar equitable relief.

The Meltons argue Hinrichs failed to show he would suffer irreparable harm or that the harm would be greatly disproportionate.

The Meltons claim the trial court did not properly factor Hinrichs's failure to explore other options for access. The Meltons argue that Hinrichs had the option of buying an easement from the owners of the properties over which Hermitage Road runs. What the Meltons fail to mention is that those property owners include Valiulis and themselves, the very defendants in this case who have vigorously opposed any easement across their lands. In addition, Valiulis testified that Hinrichs's daughter asked him to give her father an easement. Valiulis did not respond that he might be willing to sell an easement; he did not respond at all. George Melton testified that prior to the filing of this action, Hinrichs offered him $10,000 for an easement. Melton refused the offer and made no counter-offer. The court could conclude there was no reasonable probability Hinrichs could purchase an easement over Hermitage Road.

7

The Meltons suggest the trial court could have created an easement through the Asquith parcel directly to Hinrichs's parcel. But the Asquith parcel is developed with an olive orchard. The court chose a route for an easement by necessity through the Asquith parcel that runs for most of its length along an existing driveway. The existing driveway is the most reasonable route through the Asquith parcel.

The trial court found that Hinrichs would suffer irreparable harm if some easement or easements are not imposed. The court found that without such an easement or easements Hinrichs's parcel would be landlocked. The court chose a route that was the least disruptive for all the servient parcel owners involved. It used an existing driveway over the Asquith parcel and a small portion of the Melton parcel that was separated from the bulk of the parcel by a creek. The Meltons seldom visited that portion of their parcel and it had little or no development potential. The court properly balanced the hardships.

The Meltons' reliance on *Shoen v. Zacarias* (2015) 237 Cal.App.4th 16 (*Shoen*) is misplaced. There the court held that the hardship plaintiff would suffer by having to move her portable patio furniture is not greatly disproportionate to the harm suffered by defendant in losing the use of a portion of her land for an easement. (*Id*. at p. 21.) Here the harm suffered by Hinrichs would be leaving his property landlocked, not having to move portable patio furniture.

Nor does *Shoen* require the application of the Fifth Amendment takings clause to an equitable easement. *Shoen* cites the Fifth Amendment only as a reason why courts approach the imposition of an equitable easement with an abundance of

8

caution. (*Shoen*, *supra*, 237 Cal.App.4th at p. 21.) But neither *Schoen* nor any other case requires a Fifth Amendment takings analysis in determining whether to impose an equitable easement. Fifth Amendment analysis applies to legislative or quasi-legislative acts. (See, e.g., *Loretto v. Teleprompter Manhattan Catv Corp.* (1982) 458 U.S. 419 [statute requiring apartment building owners to allow installation of cable television box].) The Meltons cite no case applying takings analysis to judicial decisions.

In any event, the Fifth Amendment does not prohibit a taking, it only requires the payment of just compensation. The doctrine of equitable easements allows compensation to the servient property owner. (*Linthicum*, *supra*, 175 Cal.App.4th at p. 268.) The Meltons do not contend the trial court prevented them from seeking compensation from Hinrichs in this case.

II

*Hinrichs's Appeal*

Much of Hinrichs's appeal is based on a view of the evidence in a light most favorable to himself. But that is not how we view the evidence.

In viewing the evidence, we look only to the evidence supporting the prevailing party. (*GHK Associates v. Mayer Group, Inc.* (1990) 224 Cal.App.3d 856, 872.) We discard evidence unfavorable to the prevailing party as not having sufficient verity to be accepted by the trier of fact. (*Ibid.*) Where the trial court or jury has drawn reasonable inferences from the evidence, we have no power to draw different inferences, even though different inferences may also be reasonable. (9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 376, pp. 434-435.) The trier of fact is not required to believe even uncontradicted

9

testimony.  (*Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028.)

(*a*)

Hinrichs challenges the trial court's finding that he did not have a prescriptive easement over the trail as it passes through the Melton and Valiulis parcels.

The elements of an easement by prescription are open and notorious adverse use of the land of another that is continuous and uninterrupted for the five-year statutory period. (*Connolly v. McDermott* (1984) 162 Cal.App.3d 973, 976.)  The burden of proof is on the party asserting the prescriptive easement.  (*Ibid*.)  It is for the trier of fact to determine whether the elements of a prescriptive easement have been established.  (*Ibid*.)

Hinrichs claims the evidence establishes his prescriptive easement was acquired no later than the early 1900's.  He points to numerous exhibits containing maps, deeds, easement grants and aerial photographs.  But he fails to explain what it is about the exhibits that presents incontrovertible evidence of a prescriptive easement in his favor.

Hinrichs points to his own testimony that by 1960 his family had used the trail for ingress and egress to and from his property for six years.  He claims the evidence is uncontroverted. But he confuses uncontroverted evidence with credible evidence. The trier of fact is not required to believe uncontradicted testimony.  (*Sprague v. Equifax*, *supra*, 166 Cal.App.3d at p. 1028.)  Hinrichs points to nothing in the record that would compel a trier of fact to find he carried his burden of proving a prescriptive easement.

(*b*)

Hinrichs claims the trial court erred in finding he did not have an easement appurtenant to the patent.

The United States conveyed Hinrichs's parcel to his predecessor in 1898. The patent conveyed the land "with the appurtenances thereof . . . ." Hinrichs claims that the trail easement was an appurtenance to the land.

But the trial court concluded that Hinrichs failed to prove the trail was an easement appurtenant to the parcel at the time of the conveyance by patent. The court relied on *McFarland v. Kempthorne* (9th Cir. 2008) 545 F.3d 1106, 1111 (*McFarland*), for the proposition that "'[w]hile the word "appurtenance" will carry with it an existing easement, it will not create the easement.'"

Hinrichs argues *McFarland* is short on analysis and historical perspective. Instead, Hinrichs relies on California cases. His reliance is misplaced.

*Guerra v. Packard* (1965) 236 Cal.App.2d 272, concerns an easement by prescription. It does not even remotely concern the claim of an easement acquired as an appurtenance to a patent. Nor does it in any way contradict *McFarland*.

*Corea v. Higuera* (1908) 153 Cal.451, 454, states nothing more than that an easement appurtenant runs with the land. It does not hold, or even discuss the proposition, that the use of the word "appurtenance" in a federal land patent can create an easement.

Finally *Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 807, states nothing more than that an easement by necessity can be created over federal lands. It does not remotely support

11

Hinrichs's claim of an easement created by use of the word "appurtenances" in a federal land patent.

(*c*)

Hinrichs challenges the trial court's finding that if he ever had an easement over the Valiulis parcel, it was extinguished by adverse possession.

The elements of adverse possession are: actual possession under circumstances as to constitute reasonable notice to the owner; possession that is hostile to the owner's title under claim of right or color of title; continuous and uninterrupted possession for five years; and the payment of all taxes assessed on the property. (*Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 325.) The circumstances that constitute reasonable notice to the owner are sometimes described as possession that is open, notorious and visible. (*Id.* at p. 326.)

An easement may be extinguished by adverse possession by the owner of the servient estate. (*Glatts v. Henson* (1948) 31 Cal.2d 368, 370-371.) The owner of the servient estate must use his land in a manner that is adverse to the exercise of the easement. (*Id.* at p. 371.)

Hinrichs argues that the undisputed facts show he last moved the rocks that block the entrance to the trail in October 2006. The instant lawsuit was filed in April 2011, less than five years after Henrichs claimed he moved the rocks. But Hinrichs again confuses undisputed facts with credible evidence. The trial court may reject undisputed facts as not having sufficient verity. (*Sprague v. Equifax, Inc., supra,* 166 Cal.App.3d at p. 1028.)

Hinrichs argues Valiulis's possession was not open and notorious. But Valiulis placed large boulders and a barbed

12

wire fence that blocked the entrance to the trail.  That is more than adequate to give notice to Hinrichs and everyone else that Valiulis is adversely possessing whatever easement might exist over the trail.

Hinrichs argues that Valiulis's actions were not hostile to him.  Hostility does not require a dispute.  (*Sorensen v. Costa* (1948) 32 Cal.2d 453, 459.)  It only requires that claimant's possession be adverse to the easement holder, unaccompanied by any recognition of the easement holder's rights, express or inferable from the circumstances.  (*Ibid.*)

Here Valiulis blocked the entrance to the trail with large boulders.  He testified he intended to prevent everyone from using the trail.  That would include Hinrichs.  Hinrichs complains that Valiulis remained silent concerning his use.  But the boulders spoke louder than words.  The trial court could reasonably conclude Valiulis's use of his property was hostile and adverse to Hinrichs's use of the trail.

Substantial evidence supports the trial court's finding of adverse possession.

### (*d*)

Hinrichs contends the trial court erred by failing to impose an equitable easement over the Valiulis parcel.

But the trial court found that the hardship to Hinrichs is that his parcel is landlocked.  The imposition of easements over the Melton and Asquith parcels alleviated that hardship.  The court could reasonably conclude the balance of the hardships did not justify imposition of an easement over the Valiulis parcel.

13

(*e*)

Hinrichs contends the trial court erred in not choosing the historical trail as the route for the easement.

Hinrichs states the historical trail is in virtually a straight line with a minimal grade. He claims the Asquith route is "highly problematic." He states it will require the removal of dozens of olive trees; removal of a significant amount of dirt and fill; vertical retaining walls; cause problems with a well; and, worst of all, it goes through the Asquith's parking lot where they give tours on Tuesdays and Saturdays for 200 people or more.

But Hinrichs cites no authority that he is entitled to the most direct route, or the most convenient route, or the route that is the least expensive to construct. The trial court personally viewed the properties. Nothing in the record shows the trial court abused its discretion in choosing the route.

(*f*)

Hinrichs contends the trial court erred in not awarding him costs against the Meltons and Asquith. The court found there was no prevailing party and ordered each party to bear its own costs.

Hinrichs argues he is the prevailing party because he obtained his litigation objective: access easements. (Citing *Wakefield v. Bohlin* (2006) 145 Cal.App.4th 963, 988-989, disapproved on other grounds in *Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1330.) Hinrichs relies on Code of Civil Procedure section 1032, subdivision (b)[2]: "Except as otherwise expressly provided by statute, a prevailing party is entitled as a matter of right to recover costs in any action or proceeding."

---

[2] As used in this section of the opinion, all statutory references are to the Code of Civil Procedure.

14

But section 1032, subdivision (a)(4) provides in part: "When any party recovers other than monetary relief . . . the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not  . . . ."

The mandate of cost recovery in section 1032, subdivision (b) is limited by the phrase "[e]xcept as otherwise expressly provided by statute."  Subdivision (a)(4) contains such an express statutory exception when the trial court awards nonmonetary relief.  When the court awards nonmonetary relief, subdivision (a)(4) gives the court discretion to "allow costs *or not.*" to the prevailing party (italics added; see *Lincoln v. Schurgin* (1995) 39 Cal.App.4th 100, 104-105 [section 1032, subdivision (a)(4) gives the trial court discretion not to allow costs to prevailing party].)

Hinrichs received nonmonetary relief.  Thus, even if he is the prevailing party, the trial court had the discretion not to allow him costs.  The court did not abuse its discretion.  The court could reasonably conclude that imposing easements is costly enough for the defendants without the addition of court costs.

Hinrichs complains that the trial court ignored its section 998 offers.  Subdivision (a) of section 998 provides, "The costs allowed under sections 1031 and 1032 shall be withheld or augmented as provided in this section."  Hinrichs provides no authority that the provisions of section 998 apply when, as here, no such costs are allowed.

Moreover, even if section 998 does apply, the only sanction where the defendant refuses plaintiff's offer is that the trial court "in its discretion" may award plaintiff expert witness

costs.  (§ 998, subd. (d).)  Here the court exercised its discretion not to award Hinrichs's costs.

### III

### *Asquith's Appeal*

Asquith contends there is no need for an easement by necessity over its parcel.

An easement by necessity requires a unity of ownership of the dominant and servient parcels at the time of a conveyance and strict necessity for a right of way because the conveyance left the dominant parcel landlocked.  (*Pipkin v. Der Torosian* (1973) 35 Cal.App.3d 722, 729-730.)

Asquith argues there is no necessity because the 1999 deed from Hinrichs to Asquith reserved an easement.  But the easement reserved in the 1999 deed connected to the historic trail.  The trial court found Hinrichs reserved the easement under the mistaken belief that he had a right of access over the historic trail.  In fact, he had no such right.  Hinrichs's parcel was landlocked in spite of the reserved easement.

Asquith argues Hinrichs's parcel only became landlocked when the Meltons adversely possessed the easement over the historic trail.  That ignores the trial court's finding that Hinrichs never had an easement over the trail.

Asquith argues that access by Hermitage Road presents another option.  But Hinrichs has no right of access over Hermitage Road.

Asquith argues that if Hinrichs ever had a claim of an easement by necessity, the claim is barred by the statute of limitations.  Asquith points out that the trail has been completely blocked for more than five years.  Asquith concludes that the five-year statute of limitations on quiet title actions found in Code of

Civil Procedure section 318 extinguished any easement. There is no doubt that the Meltons extinguished any easement over the trail by adverse possession. But that does not mean an easement by necessity over the Asquith parcel has been extinguished by adverse possession.

An easement by necessity cannot be extinguished as long as the necessity exists. (*Kellogg v. Garcia*, *supra*, 102 Cal.App.4th at p. 804.) The five-year statute of limitations on quiet title actions found in Code of Civil Procedure section 318 does not apply to an easement by necessity. (*Ibid*; 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 398, p. 466.)

## DISPOSITION

The judgment is affirmed. Each party is to bear its own costs.

## CERTIFIED FOR PUBLICATION.

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

17

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____

Osborne Law Firm and Brian A. Osborne for Plaintiff, Cross-defendant and Appellant Leslie Witherspoon Hinrichs.

Jones & Lester and Paul R. Huff; Fell, Marking, Abkin, Montgomery, Granet & Raney and Craig S. Granet for Defendants, Cross-complainants and Appellants George R. Melton and Margaret Ann Melton, Trustees of the Melton California Trust dated July 1, 2003.

Jones & Lester and Paul R. Huff for Defendant, Cross-complainant and Appellant the Eugenijus Valiulis Revocable Living Trust dated October 2, 2012.

Fidelity National Law Group and Raymond Perez, Jr. for Defendant, Cross-complainant and Appellant Asquith Family Limited Partnership.



appendix A